UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NELSON LEE JEFFERSON,

                Petitioner,

v.                                  Case No. 3:05-cv-250-32HTS

JAMES R. MCDONOUGH,
etc.; et al.,

                Respondents.

_____

**ORDER**[1]

**I. Status**

      Petitioner Nelson Lee Jefferson, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on March 21, 2005. Petitioner challenges a 1998 state court (Duval County, Florida) judgment of conviction for aggravated battery with a firearm, attempted first degree murder with a firearm, aggravated assault with a firearm, possession of a firearm by a convicted

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

felon and exhibiting weapons or firearms on school property on the following grounds: (1) ineffective assistance of trial counsel for failure to advise, investigate, prepare and present a voluntary intoxication defense, and (2) the trial court erred in finding Petitioner to be an habitual felony offender without notice and proof by the State.

Respondents filed an Amended Answer to Petition for Writ of Habeas Corpus (Doc. #18) (hereinafter Response). They submitted exhibits in support of their Response.[2] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order to Show Cause and Notice to Petitioner (Doc. #8). Petitioner has filed a Reply. See Petitioner's Reply to Respondents' Amended Answer (Doc. #23). This case is now ripe for review.

## II. Procedural History

On November 5, 1998, Petitioner entered a plea of guilty to aggravated battery with a firearm (count one), attempted first degree murder with a firearm (count two), aggravated assault with a firearm (count three), possession of a firearm by a convicted felon (count four) and exhibiting weapons or firearms on school property (count five) and was subsequently sentenced to twenty years on count one, forty years on count two (with a fifteen-year

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

2

minimum mandatory), ten years on count three, twenty years on count four and ten years on count five, all to run concurrently.  Ex. D, Plea of Guilty, filed November 5, 1998, and Judgment, filed December 3, 1998.  He was sentenced as an habitual felony offender on counts one, three, four and five and an habitual violent felony offender with respect to count two.  Ex. D, Judgment.

On direct appeal, Petitioner raised the following claim:  the trial court erred in finding Petitioner an habitual felony offender because the State never gave notice that it considered him as such and it failed to prove he had two prior felony convictions, as required by Section 775.084(1)(a), Florida Statutes.  Ex. B, Initial Brief of Appellant.  The State filed an Answer Brief.  Ex. C.  On January 13, 2000, the appellate court per curiam affirmed without issuing a written opinion.  Ex. A; Jefferson v. State, 752 So.2d 602 (Fla. 1st DCA 2000).  The mandate was issued on January 31, 2000.  Ex. A.

On or about March 8, 2001, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he raised the following ground:  ineffective assistance of trial counsel for failure to advise, investigate, prepare and present a voluntary intoxication defense.  Ex. I at 1-39.  An evidentiary hearing in state court was conducted on October 24, 2002, at which Petitioner was represented by counsel.  Ex. I, Transcript of the Evidentiary Hearing (hereinafter EH Tr.).  After

the hearing, on December 10, 2002, the trial judge denied Petitioner's Rule 3.850 motion. Ex. I at 44-51. On December 13, 2004, the appellate court per curiam affirmed without issuing a written order. <u>Jefferson v. State</u>, 892 So.2d 478 (Fla. 1st DCA 2004); Ex. F. On January 20, 2005, Petitioner's motion for rehearing was denied. Ex. F. The mandate was issued on February 7, 2005. <u>Id</u>.

Petitioner's Petition (signed on March 16, 2005, and filed in this Court on March 21, 2005) is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Response at 2-3.

### III. EVIDENTIARY HEARING

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); <u>Cave v. Singletary</u>, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing <u>Townsend v. Sain</u>, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. The Court can "adequately assess [Petitioner's] claim[s] without further factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

4

## IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted). . . .

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir.), cert. denied, 126 S.Ct. 803 (2005).  Furthermore, AEDPA also directs that a presumption of correctness be afforded to factual findings of state courts, which may be rebutted only by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination

5

will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S.

1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law:  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." _Id_. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." _See Strickland_, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." _See Chandler_, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test." _Strickland_, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. _See id_. at 2068.

_Van Poyck v. Florida Dep't of Corrections_, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), _cert_. _denied_, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and

7

the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

> that the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u>, <u>supra</u>, and <u>McMann v. Richardson</u>, <u>supra</u>. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that trial counsel was ineffective for failure to advise, investigate, prepare and present a voluntary intoxication defense. Respondents acknowledge that Petitioner raised this claim in his Rule 3.850 motion and on appeal of the Rule 3.850 motion. Response at 3. After an evidentiary hearing, the trial court adjudicated this claim on the merits. In denying this claim, the trial court identified the two-prong <u>Strickland</u>

8

ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's instant Motion, he alleges that counsel was ineffective for failing to advise, investigate, prepare and present a voluntary intoxication defense. The Defendant's trial counsel, Quentin Till, Esquire, testified at the evidentiary hearing regarding the viability of a voluntary intoxication defense in the Defendant's case and the communications he had with the Defendant. On direct examination, Mr. Till testified as follows:
>
> > Q (Prosecutor): Were you also made aware of what Mr. Jefferson's statement was when he was initially arrested by the police?
> >
> > A (Mr. Till): Yes. Mr. Jefferson did give a confession. The crux of his confession was it was pretty much self-defense. And I reviewed the affirmative defense of self-defense looking at the tracking [of] the whereabouts of Mr. Jefferson on the school grounds, almost like sort of stalking individuals who he came in contact with on the school grounds prior to the shooting.
> >
> > It is interesting to note that in his confession, first of all, there was preliminary statements as to his education and so forth, no evidence that he had been drinking during [sic] taking of this sworn statement. The last sentence or two when that confession talks about after this incident had happened, he had gone home and had - and had a drink or two or drank intoxicating beverages after the fact. He hadn't mentioned anything during this incident that he was in anyway impaired whatsoever.

(Exhibit "D," page 13.)   Mr. Till, further, testified:

Q: Were you in your approximate seven month investigation period, were you ever made aware of facts by this defendant or anyone that he was under the influence of alcohol or drugs to the extent that he would not be criminally liable for these offenses?

A: No, not at all.  It was a hard case, I mean, they had all types of eye witnesses in this case.

If I could run you through the scenario, Mr. Jefferson was on the school grounds talking to a young lady.  He goes to an automobile. I deposed those individuals. And he requested a cigarette and chatted with the two, I believe they were white, young males, may have been students.  No signs of impairment as he's talking to these individuals, sort of chatting and he got the cigarette.

He's observed walking around the school yard from - and the school yard in the front there is probably the size of a football field, it is where - and at this time there were about - school was letting out, there were probably 35, 40 buses there.   So Mr. Jefferson was observed at one time here, then walking over to another position. So he's probably walking almost a hundred yards around the front of the school the day of the shooting. No one sees anybody stumbling or seeming to be intoxicated.  It was sort of like [a] pretty calculated shooting from behind school buses and so forth.

(Exhibit "D," pages 13-14.)   Concerning his conversations with the Defendant, Mr. Till testified:

> Q: Did you during your extended period of investigation have multiple conversations with the defendant himself?
>
> A: I did have conversations on numerous occasions with Mr. Jefferson.
>
> Q: Did he give you a recitation of the facts of what he believed to have happened.
>
> A: He did. And if I had any clue whatsoever that he - that there was a voluntary intoxication defense, which I think would have been an impossible defense, are we going to discount what he says in his confession about it being self-defense, forget about that and ladies and gentlemen, he was too intoxicated to form the intent? That would never have flown in court in front of the jury. It was too calculating.
>
> We were stuck with the confession and we have no witnesses.  I even doubt looking at the case law that we would even have a jury instruction, if the only person we had was Mr. Jefferson saying "I was too drunk to form an intent." There's just no evidence to support that.
>
> I think the case law is strong that if it's only - if you're claiming self-defense now, all of a sudden you're claiming "I was just too intoxicated," the First District Court of Appeals has said, "That's not good enough to even get a jury

11

instruction." So I would be up there arguing to a jury facts that they wouldn't even get a jury instruction on.

Now I will say that and I do have notes here some places that Mr. Jefferson stated that when he did get home after this was over, he sat down and had a bottle of - drank out of a bottle of VO or some type of brandy or something.

The photographs of the apartment where he was arrested doesn't [sic] show the first bottle or can of beer, bottle of whiskey, doesn't show any drugs. The house is a very neat, and I think this was his girlfriend's house where he was living, so there was no evidence of maybe stacks of whiskey bottles some place which gives some credence to this intoxication defense.

(Exhibit "D," pages 15-16.)   Mr. Till, further, testified that:

And I think after taking all the depositions, I honestly felt like we wouldn't have a chance at all in trial, and I would say that today. Even if he had the voluntary intoxication given to the jury, "Well, if you don't think it was self-defense let me give you another alternative and let's talk about even too drunk to have the intent to commit this crime." It would be hard to keep a straight face in front of a jury with that type of affirmative defense; that's my feeling.

(Exhibit "D," page 17.) Finally, on cross-examination, Mr. Till testified:

12

Q (Ms. Johnson):  Okay. And can you recall today whether he ever told you that he was high at the time that these offenses were committed?

A (Mr. Till):  Unfortunately - first of all, I got along with Mr. Jefferson very well.  And I know it's not important to the Court, but I think 40 years is excessive but I know we're not here today but we did plead to the Court.  Yeah, we discussed all aspects of the case.

Never once, never once did he contradict his confession, never did he indicate to me that he had long ongoing problems with alcohol or drugs.  Mr. Jefferson was a very qui[et] man, reserved, was hard to get facts from him.

There was a young lady, I think her name - his girlfriend Kona, I believe, who he was living with, I've got in my notes where I spent four or five times, this was his girlfriend, I'm not sure what happened to the relationship after the shooting, but I was never successful in obtaining her whereabouts.  I had a telephone number, tried and tried.

None of his friends came forward regarding the drive-by shooting or the - or at the school there to give me any additional evidence that Mr. Jefferson was just so intoxicated that he didn't know what he was doing out there and couldn't form, you know, couldn't form an intent.

(Exhibit "D," pages 19-20.)

The Defendant testified at the evidentiary hearing regarding his conversations with Mr. Till. The Defendant testified:

> Q: Okay.  When you talked about the case did you ever inform Mr. Till about whether you had been drinking or smoking marijuana right before the charges that you were facing?
>
> A: Yes, I had.
>
> Q: Okay.  How many times do you think you told him that?
>
> A: I talked to him about it numerous times but we kept focusing on another issue which was the gun that I had that didn't have a clip it [sic], it only had a bullet in the chamber.

[(]Exhibit "D," pages 25-26.)  The Defendant also testified:

> Q: Okay. At the time were you aware of the possibility of a defense based on voluntary intoxication?
>
> A: No, I was not, and if I was I'm quite sure we would have used it at that time.
>
> Q: Okay. Are you saying that you might have made a decision to go to trial if you had been aware that you had a defense?
>
> A: Yes, I would.

(Exhibit "D," page 26.)  Finally, the Defendant testified that he had been drinking before and after committing his offenses. (Exhibit "D," pages [sic] 29.)

On cross-examination, the Defendant testified that he was aware he could potentially receive life imprisonment for his offenses. (Exhibit "D," page 31.) The State questioned the Defendant regarding his use of a firearm at the school.  Specifically in

14

response to the State's questions the following occurred:

> Q (Prosecutor): Going back to February 26th, 1998, sir, when you were at Forest High School with your friends and you pulled a gun, was it self-defense?
>
> Ms. Johnson: Again beyond the scope of his motion which is involuntary intoxication.
>
> The Court: Overruled. Answer the question.
>
> The Defendant: I want to say yes.
>
> Q: Yes, it was?
>
> A: That's the tactic that Quentin Till and I were going to use, yes.

(Exhibit "D," page 33.)   Finally, the Defendant again testified that when he pulled the gun at the high school, he was acting in self-defense.  (Exhibit "D," page 34.)

This Court specifically finds that Mr. Till's testimony that the Defendant did not tell him that he had been drinking prior to committing his offenses was both more credible and more persuasive than the Defendant's allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997).  Further, based on this evidence, this Court finds that counsel's trial strategy was "reasonable and resulted in no prejudice" to the Defendant, and that the Defendant has failed to demonstrate error on behalf of counsel. Harris v. State, 768 So.2d 1179 (Fla. 4th DCA 2000).  Accordingly, this Court finds that the Defendant has failed to establish error on the part of Mr. Till or prejudice to his case.

Ex. I at 2-7.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this claim to be without merit.  The state court resolved the credibility issue in favor of believing Mr. Till's testimony over that of the Petitioner.  The Court notes that credibility determinations are questions of fact.  See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).  Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Given the trial court's credibility determination, it is

16

clear that Petitioner's ineffectiveness claim is wholly unsupported and therefore, the claim must fail.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that Mr. Till's performance was reasonable is even stronger since the record reflects that he is an experienced criminal defense attorney.[3] <u>See</u> EH Tr. at 7-8. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

---

[3] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). At the October 24, 2002, evidentiary hearing, Mr. Till testified that he had been an attorney for thirty-four (34) years, specializing in criminal law in both the state and federal courts. EH Tr. at 7. He had handled approximately 250 criminal jury trials and had represented thousands of criminal defendants over the years. <u>Id</u>. at 7-8; <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246 (2000).

Mr. Till testified that he deposed approximately twenty-five witnesses, visited the crime scene, took his own photographs and therefore "had a good comprehension of the facts including Mr. Jefferson's confession or statement that he gave upon his arrest." EH Tr. at 11. During the seven-month investigation period, Mr. Till was never made aware of facts by Petitioner or anyone else that Petitioner was under the influence of alcohol or drugs to the extent that he would not be criminally liable for the offenses. Id. at 13-14. Mr. Till never discussed the voluntary intoxication defense with Petitioner because "[t]here was just no evidence there." Id. at 16-17. Mr. Till testified that it was not his practice, in representing clients, to point out an affirmative defense to a client when that particular defense was not applicable to the client's set of facts. Id. at 16.

Mr. Till opined that the State's case against Petitioner was strong.

> [W]e had his confession, I think we both knew it was a bad case, you know, it's a tough case especially the way the State was going to present this case about -- I even filed motions, I think, that this wasn't gang related, I think, [I] filed [a] motion in limine. I don't want this jury thinking this is some predator coming down from Chicago, some gang member, and shooting up our local campus. I don't think that was -- really was the case.
>
> And I think after taking all the depositions, I honestly felt like we wouldn't have a chance at all in trial, and I would say that today. Even if he had the voluntary

> intoxication given to the jury, "Well, if you
> don't think it was self-defense[,] let me give
> you another alternative and let's talk about
> even too drunk to have the intent to commit
> the crime."  It would be hard to keep a
> straight face in front of a jury with that
> type of affirmative defense; that's my
> feeling.

> . . . .

> I just think this case was overwhelming.

> . . . .

> Mr. Jefferson gets 40 years.  And you know, I
> got my feelings about that, but I still think
> it could have been worse going to trial with
> the case, there was just -- it was just a no
> brainer in trying to take a plea and hopefully
> having the Judge come up with a reasonable
> disposition in the case.

Id. at 17, 22, 23.

Furthermore, the trial court conducted a thorough inquiry during the plea colloquy.  Ex. D, Transcript of the Plea Proceeding (hereinafter Plea Tr.).  The prosecutor set forth the factual basis for the plea:

> Your Honor, back on February 26th of this
> year, 1998, this defendant along with some
> other men went up to Forest High School, which
> is located here in Jacksonville, Duval County,
> Florida.  It is one of our public high
> schools.

> The defendant went to that school with
> the intent of having some sort of fight with
> another group.  When this other group, which
> included Kevann Coleman appeared at the
> school, there was some shooting.

> After that shooting was over, this
> defendant then took out a revolver while at

19

the school property, right within the fence where the buses come in, he took a revolver out and then followed Kevann Coleman as he was running onto the school property and the defendant shot at Kevann Coleman with the intent to kill him.

He shot Kevann Coleman, in fact, in the mouth, causing serious personal injury to Kevann Coleman.  The defendant then fired additional shots, including -- he struck a student by the name of John Sampson in the leg with this revolver.

He also, the defendant, as he was shooting the gun, pointed the gun at a security officer, Rusty Kellum, who was also there on the school property, placing Rusty Kellum in fear of his life.

Obviously, Your Honor, with the above facts, he did recklessly display or exhibit a handgun at or within 1,000 feet of Forrest High School here in Duval County.

This defendant has also previously been convicted of robbery in the Third Circuit of Cook County Illinois back on June 12th, 1996.

Id. at 14-15.  Defense counsel did not object.  Id. at 15.

After informing Petitioner that he could receive up to life imprisonment plus eighty years' imprisonment for the five charges if he proceeded to trial and the jury found him guilty, the trial judge asked Petitioner, "[H]as anybody made you any kind of promises as to what kind of sentence you would receive, other than it would be between 15 and 40 as a habitual violent felony offender?"  Id. at 8-9.  Petitioner replied, "No, sir."  Id. at 9. The court then inquired, "Do you understand that as a habitual violent felony offender the law requires that you would have to at

20

least serve that minimum of 15 years?  Do you understand that?"
Id. at 9-10.  Petitioner replied, "Yes, sir."  Id. at 10.
Additionally, Petitioner acknowledged that his attorney had
answered all of his questions regarding his case and had fully
discussed all aspects of all five charges.  Id. at 12.  Thereafter,
the court asked, "Are you satisfied with Mr. Till's representation
as your lawyer in this case?"  Id.  Petitioner replied, "Yes, sir."
Id.  Further, Petitioner acknowledged that he had a sufficient
amount of time to consider the charges before he pleaded guilty.
Id. at 13.  Finally, the trial judge inquired, "Do you recognize
that if you have any defense that once I accept the pleas today
those defenses to these five charges are no longer available to
you?"  Petitioner replied, "Yes, sir."  Id.  Petitioner conceded
that he did not need additional time to consult with his lawyer.
Id.

Although a defendant's statements during the plea colloquy are
not insurmountable, the Supreme Court held in Blackledge v.
Allison, 431 U.S. 63, 73-74 (1977), that "the representations of
the defendant [at a plea hearing], as well as any findings made by
the judge accepting the plea, constitute a formidable barrier in
any subsequent collateral proceedings.  Solemn declarations in open
court carry a strong presumption of verity."  Here, based upon the
record before this Court, Petitioner has not overcome this barrier.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown prejudice. In cases such as this, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. at 59 (citing Evans v. Meyer, 742 F.2d 371, 375 (7th Cir. 1984)).[4]

_____

[4] In Evans, the appellant also claimed that his attorney was ineffective for failing to advise him of an intoxication defense. The court set forth the facts in the Evans case as follows:

> At 4:30 one morning Evans entered a police station and asked the radio operator, Lonbom, to call Detective Azbill for him. Lonbom told Evans to call Azbill himself, using a telephone in another office. Evans left but returned shortly and placed a steak knife against Lonbom's neck and told him to call Azbill and tell him to come to the station. Lonbom did as told. When Azbill arrived, Evans told him to unload his gun and place the gun and cartridges on the counter; Azbill complied. Evans then told Azbill to go and get a police report on him. Azbill again did as told. When he returned he noticed that Evans had reloaded Azbill's gun and was holding it. Azbill expressed some concern about this turn of events but Evans assured Azbill that he was afraid of guns and never used them. Evans let Lonbom leave the station, and Evans and Azbill then spent an hour and a half discussing the contents of the police report and also the question of Evans' visitation rights with his daughter. Azbill told Evans he thought he could bring the daughter to the station and Evans told him that that was what he wanted. Azbill brought the child to the station, where Evans spoke

22

As noted previously, the facts in this case did not support a voluntary intoxication defense, and counsel believed that arguing such a defense to the jury would not have been successful.[5]  Thus, there is no reasonable probability that, but for counsel's failure to advise Petitioner of a voluntary intoxication defense, Petitioner would not have pleaded guilty and would have insisted on proceeding to trial.  The State's case against Petitioner was overwhelming.  See EH at 17, 22, 23.  If Petitioner had proceeded to a trial and was found guilty by the jury, he faced life imprisonment with an additional eighty years' of imprisonment.  Plea Tr. at 3, 8-9.  Accordingly, Petitioner has not shown that he was prejudiced by counsel's failure to advise him of a voluntary intoxication defense.  Thus, this claim must fail.

---

> with her privately for a while and was then arrested. . . .

Evans v. Meyer, 742 F.2d at 373.  The court concluded that the "facts of the incident out of which the criminal charges grew made it inconceivable that a jury would have acquitted Evans because he was too intoxicated to form the intent required to commit these crimes."  Id. at 374 (citation omitted).  The court noted that "[i]t is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that while theoretically possible is hopeless as a practical matter."  Id.

[5]  Mr. Till characterized voluntary intoxication as "an impossible defense" for Petitioner's case.  EH Tr. at 15.  He stated the defense was contradictory to Petitioner's confession of self-defense and there was no evidence to support a voluntary intoxication defense.  Id. at 15-17.  Finally, he noted that it is a difficult defense to present to a jury in Duval County, Florida.  Id. at 18.  Petitioner did acknowledge, at the evidentiary hearing, that the shooting was in self-defense.  Id. at 33-34.

## B. Ground Two

Petitioner claims that his Fourteenth Amendment right to due process was violated when the trial court erred in finding him to be an habitual felony offender without adequate notice by the State and "failure to prove burden for [the] enhanced sentence." Petition at 10.  Specifically, he alleges:

> The State filed a notice that it intended to classify me as an habitual violent felony offender.  It never filed a similar notice of it's [sic] intention to classify me as an habitual felony offender.  This error violated my Fourteenth Amendment right to Due Process.

Id.  Respondents contend that Petitioner never raised a federal constitutional issue with regard to his habitual offender sentence, and therefore the state appellate court never had the opportunity to consider such a claim of federal constitutional dimension. Response at 11.  On direct appeal, Petitioner presented this claim solely in terms of trial court error, citing only to state law in support of his argument.  See Ex. B, Initial Brief of Appellant. He did not argue that the error violated the Due Process Clause of the United States Constitution.  Thus, Petitioner has not exhausted his federal constitutional claim under ground two.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on

24

his claims before he presents those claims to a federal court in a habeas petition." Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

If a petitioner presents a federal claim in a federal habeas petition, he must have exhausted the same federal claim in state court rather than presenting the issue to the state courts in terms of trial court error or a violation of state law or procedure.

> To present a federal constitutional claim properly in state court, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); see also, Isaacs v. Head, 300 F.3d 1232, 1254 (11th Cir. 2002) (Seriatim Opinions) (Opinion of Anderson J.). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for

> relief." <u>Henry v. Dept. of Corr.</u>, 197 F.3d
> 1361, 1366 (11th Cir. 1999) (quoting <u>Gray v.
> Netherland</u>, 518 U.S. 152, 116 S.Ct. 2074,
> 2081, 135 L.Ed.2d 457 (1996)).

<u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1307 (11th Cir. 2003) (per curiam), <u>cert</u>. <u>denied</u>, 543 U.S. 842 (2004).  Petitioner did not cite any federal cases in his initial brief, nor did he refer to the United States Constitution.  <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (holding that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303-04 (11th Cir. 2005) (finding that the petitioner's references to federal law in his state habeas proceedings were "exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement" and noting that the petitioner never cited any United States Supreme Court or federal appellate court cases; instead, "he relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion"), <u>cert</u>. <u>denied</u>, 126 S.Ct. 1828 (2006).

It would be futile for this Court to dismiss this unexhausted federal claim because it could have and should have been raised on direct appeal and motions for post-conviction relief are "neither a second appeal nor a substitute for appeal." <u>McCrae v. State</u>, 437

So.2d 1388, 1390 (Fla. 1983).  Clearly, "[a] petitioner in Florida
is not entitled to collateral relief 'based upon grounds which
could have or should have been raised at trial and, if properly
preserved, on direct appeal of the judgment and sentence.'"  Tejada
v. Dugger, 941 F.2d 1551, 1556 (11th Cir. 1991) (quoting Fla. R.
Crim. P. 3.850(c)), cert. denied, 502 U.S. 1105 (1992).

Accordingly, Petitioner's federal due process claim has been
procedurally defaulted.  "Procedural defaults in state courts will
foreclose federal court review, absent a showing of cause and
prejudice."  Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764,
770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72
(1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] federal court
may also grant a habeas petition on a procedurally defaulted claim,
without a showing of cause or prejudice, to correct a fundamental
miscarriage of justice."  Fortenberry v. Haley, 297 F.3d 1213, 1222
(11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S.
478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The
fundamental miscarriage of justice exception is only available in
extraordinary cases upon a showing of "'actual' innocence" rather
than mere "'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156,
1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S.
926 (2002).

Petitioner has not shown both cause excusing the default and
actual prejudice resulting from the bar.  Furthermore, he has not

shown that he is entitled to the fundamental miscarriage of justice exception.    Thus,   the   Court   need   not   address   Petitioner's procedurally barred federal claim.

To the extent that Petitioner may be attempting to raise, in ground two, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review.   See Response at 12.   The purpose of a federal   habeas   proceeding   is   review   of   the   lawfulness   of Petitioner's   custody   to   determine   whether   that   custody   is   in violation   of   the   Constitution   or   laws   or   treaties   of   the   United States.[6]   Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).

The Eleventh Circuit has stated that only in cases of federal constitutional   error   will   a   federal   writ   of   habeas   corpus   be available.   See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).   The Supreme Court has often held that federal habeas relief does not lie for errors of state law.   Clearly, it is not the province of a federal   habeas   court   to   reexamine   state-court   determinations   on issues of state law.   See Estelle v. McGuire, 502 U.S. 62, 67-68

---

[6] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §2254(a).

(1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Even assuming *arguendo* that Petitioner exhausted the federal claim,[7] the claim is without merit for the reasons stated by the Respondents in their Response.  <u>See</u> Response at 12-20; Ex. C, Answer Brief of Appellant; Ex. D, Sentence As Habitual Violent Felony Offender and a Habitual Felony Offender, at 45-49. Accordingly, for all of the above-stated reasons, Petitioner is not entitled to relief with respect ground two.

Therefore, the Petition will be denied and this case will be dismissed with prejudice.

---

[7] To the extent that the appellate court adjudicated the federal constitutional issue on the merits, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of February, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

sc 2/13
c:
Nelson Lee Jefferson
Ass't Attorney General (Wells)

30